**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**GLENDA S. ZUMSTEIN,**

      **Plaintiff,**

**v.**                        **Case No.:  2:13-cv-02344**

**BOSTON SCIENTIFIC CORPORATION,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

Pending before the court is Boston Scientific's Emergency Motion to Compel Glenda S.  Zumstein to Appear for Physical Examination. (ECF No. 23). Plaintiff responded in opposition to the motion. (ECF No. 27). On Monday, December 15, 2014, the court held a telephonic hearing, during which the parties appeared by counsel. After considering the arguments of counsel, the court **GRANTS** the motion to compel and **ORDERS** Plaintiff to make herself available for an examination by Defendant's expert witness, Dr. Lonny Green, on a date and time to be arranged by counsel for the parties and at a location agreed upon by the parties. The examination shall be limited to an interview, physical examination, pelvic and vaginal examination.

Federal Rule of Civil Procedure 35 authorizes the court to order a party "whose mental or physical condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." The order may only issue on good cause and adequate notice and "must specify the time, place, manner, condition,

1

and scope of the examination, as well as the person or persons who will perform it."
Fed.R.Civ.P. 35(a)(2). The law is well-settled that the "in controversy" and "good cause"
requirements of the Rule are not mere formalities; rather, they must be met with "an
affirmative showing by the movant that each condition as to which the examination is
sought is really and genuinely in controversy and that good cause exists for ordering
each particular examination." *Schlagenhauf v. Holder,* 379 U.S. 104, 118, 85 S.Ct. 234,
13 L.Ed.2d 152 (1964). Nonetheless, "there are situations where the pleadings alone are
sufficient to meet these requirements." *Id.* at 119. One such situation is a tort action in
which a plaintiff asserts mental or physical injury, placing "that mental or physical
injury clearly in controversy and [providing] the defendant with good cause for an
examination to determine the existence and extent of such asserted injury." *Id.*

In the present case, Plaintiff claims a number of physical injuries related to her
implantation with pelvic mesh designed, developed, manufactured, and marketed by
Boston Scientific. Accordingly, she has placed her urogynecologic condition squarely at
issue, supplying good cause for Defendant to request an independent medical
examination by Dr. Green, a specialist in female urology. Plaintiff has also been
examined by her own expert witness specifically to provide opinions about the nature,
extent, and cause of her alleged injuries, supplying an additional ground for Defendant
to obtain the opinion of its expert based upon his personal examination of Plaintiff. *See
U.S. ex rel. Johnson v. Universal Health Services, Inc.,* No. 1:07-cv-0054, 2011 WL
2784616, at *1 (W.D.Va. July 13, 2011); *Simon v. Bellsouth Advertising and Pub. Corp.,*
No. 3:09–CV–177–RJC–DCK, 2010 WL 1418322, at *4 (W.D.N.C. Apr. 1, 2010) (The
need to counter plaintiff's expert constitutes good cause for an independent medical
examination); *see also Tomlin v. Holecek,* 150 F.R.D. 628, 632 (D.Minn. 1993) (One

2

purpose in allowing an examination under Rule 35 is to provide a "level playing field" in the parties' efforts to evaluate the plaintiff's condition). Without the opportunity to conduct an independent medical examination, Defendant would be forced to offer a defense "limited to the mere cross-examining of evaluations offered by Plaintiff's experts." *Womack v. Stevens Transport, Inc.,* 205 F.R.D. 445, 447 (E.D.Pa. 2001). Clearly, the drafters of Rule 35 sought to remedy such an inequity. Therefore, the undersigned finds that Defendant has established the "in controversy" requirement of Rule 35 and "good cause" for ordering Plaintiff to submit to an independent medical examination.

Although Defendant satisfies the basic requirements of Rule 35, Plaintiff argues that Defendant's motion should be denied because Defendant's request for the examination was untimely. The timeline is as follows. On October 3, 2014, Defendant asked Plaintiff's counsel if any of the Wave 1 and Wave 2 plaintiffs[1] were being examined by their own expert witnesses. Plaintiff's case was included in the Wave 1 group. On October 22, 2014, Plaintiffs' counsel responded that all of his law firm's Wave 1 and Wave 2 plaintiffs were being examined. However, when provided with this information, rather than immediately requesting an opportunity to schedule Plaintiff's examination, Defendant did nothing. It was not until November 21, 2014, after both Plaintiff's expert witness and Dr. Green had submitted expert reports, that Defendant first contacted Plaintiff's counsel with potential dates for Plaintiff's independent medical examination. The proposed date for the examination, either December 10 or

---

[1]Wave 1 and Wave 2 refer to two groups of 100 cases each that are pending against Boston Scientific in this court. Wave 1 and Wave 2 cases are currently being discovered pursuant to a schedule set forth in Pretrial Order No. 100, entered in *In re Boston Scientific Pelvic Repair System Product Liability Litigation*, MDL No. 2:12-md-2326. (ECF No. 794). All 200 cases will be trial-ready by the end of January 2015.

December 11, 2014, was one month after Defendant's deadline for filing Rule 26(a)(2) expert reports. Consequently, Plaintiff refused to attend the belated examination.

According to Plaintiff, Defendant has failed to show good cause for its delay in requesting an independent medical examination. Plaintiff argues that if Defendant is permitted to schedule an examination at this late date, Plaintiff's expert will likely have to re-do his report based upon the amended opinions of Dr. Green, and that will lead to a supplemental expert deposition, and so on. Plaintiff urges the court to find that the deadline for exchanging expert reports was also the deadline for completion of independent medical examinations and, thus by extension, find that Defendant's request for an examination was simply made too late.

In response, Defendant argues that it did not know until October 29, 2014 that it needed to conduct an independent medical examination of Plaintiff. Defendant concedes that Plaintiff's counsel wrote on October 22, 2014 and stated that every one of the firm's Wave 1 and Wave 2 plaintiffs were being examined; however, it was not until Plaintiff's expert witness filed his Rule 26(a)(2) report that Defendant was able to evaluate the need for a counter examination. Defendant asserts that once it reviewed the expert reports for the plaintiffs, it learned that, contrary to counsel's representations, not every plaintiff had been examined. Moreover, of the plaintiffs that had been examined, Defendant requested an independent medical examination only of Plaintiff Zumstein. Defendant further explained that even though the decision was made to arrange an examination of Plaintiff, Dr. Green was unavailable to perform the examination during much of the month of November as he was on call to testify on behalf of Boston Scientific in a pelvic mesh trial before this court. Therefore, the earliest date Defendant could obtain for Plaintiff's examination was December 10. When the

date was received, Defendant's counsel promptly notified Plaintiff's counsel on November 21, 2014.

Defendant was unable to explain why, at a minimum, the subject of an examination was not broached with Plaintiff's counsel between October 29, 2014, when Plaintiff's expert report was filed, and November 10, 2014, the date of Dr. Green's report; however, Defendant reiterated that even if the subject had been raised, the examination still could not have been performed before December 10, 2014 due to Dr. Green's schedule. Defendant adds that this time frame is not prejudicial to Plaintiff considering that the deadline for conducting expert witness discovery does not expire until January 12, 2015. In fact, Dr. Green's deposition is tentatively scheduled on January 8 or 9, 2015. Defendant points out that Plaintiff can still be examined reasonably in advance of Dr. Green's deposition, thus allowing Plaintiff's counsel ample opportunity to review Dr. Green's examination report and prepare for his deposition.

Federal courts do not agree on whether Rule 26 and Rule 35 are intended to be read independently or in conjunction with each other. *See Manni v. City of San Diego,* Case No. 11-cv-0435-W (DHB), 2012 WL 6025783, at *3 (S.D.Cal. Dec. 4, 2012) (collecting cases). If read together, reports issued under Rule 35 are subject to Rule 26(a)(2)'s disclosure requirements. Indeed, the latter position has been taken on at least one occasion by a court in this district. *Shumaker v. West,* 196 F.R.D. 454, 456 (S.D.W.Va. 2000). Nevertheless, even when courts have found a clear distinction between Rule 26 and Rule 35, such that "a Rule 35 exam does not necessarily have to be requested prior to expiration of the expert disclosure and discovery deadline ... the distinction evaporates when the moving party attempts to use the Rule 35 examiner and Rule 35 report in the place of a Rule 26(a)(2) expert and expert report." *Perez v. Viens,*

Case No. 4:09-cv-3206, 2011 WL 855673, at *3 (D. Neb. Mar. 8, 2011) (citations omitted). In other words, when the independent medical examination is performed for the purpose of providing, developing, or supplementing expert opinions (for instance, on topics such as the causation or extent of alleged injuries), then courts tend to agree that the witness and report are subject to the Rule 26(a)(2) deadlines.

Here, the parties concur that Defendant first requested an independent medical examination of Plaintiff after the court's deadline for the disclosure of expert witnesses and Rule 26(a)(2) reports. Given that the independent medical examination proposed by Defendant is intended to be performed by Defendant's expert witness for use in forming/supporting his opinions, the examination should have been completed in time for the results to have been incorporated in his Rule 26(a)(2) report. So, Plaintiff is correct that Defendant's request for the examination was untimely.

Nevertheless, Pretrial Order #100 anticipates that for "good cause shown," expert disclosures and reports may be filed or supplemented after the deadline. (ECF No. 794). In determining whether good cause exists for the Defendant's delay, the undersigned considers Defendant's diligence in pursuing the examination and the reasons, if any, that justify the delay. The resulting prejudice to Plaintiff and fundamental fairness must also be taken into account. Defendant has provided some reasonable explanations for its late request. First, the amount of time between the Plaintiff's expert disclosure and the Defendant's expert disclosure was only twelve days. In retrospect, the Order probably did not allow Defendant enough time between the two dates to review Plaintiffs' expert reports, decide which plaintiffs to have examined, schedule the examinations and have them conducted, provide the examining experts with time to issue the examination reports and integrate the findings into the experts' Rule 26(a)(2) reports. While it is true

6

that Defendant could have requested the examination sooner, its decision to delay making such a request until after receiving Plaintiff's expert report was reasonable. As Defendant emphasizes, by reviewing the reports, it was able to determine that an independent medical examination was needed in only one case. Certainly, neither the parties nor the court want to subject any of the plaintiffs to an unnecessary physical examination. To the extent that goal is achieved by providing Defendant with an opportunity to review Plaintiff's expert report before arranging an examination, the discovery schedule will have to be arranged to accommodate that reality.

Second, the request for an examination was made approximately three weeks after Plaintiff's Rule 26(a)(2) disclosure, and only eleven days after the Defendant's Rule 26(a)(2) disclosure. During the period of time between expert disclosures, Defendant, some of its counsel, and its expert witness, Dr. Green, were tied up in concurrent pelvic mesh trials that were ongoing in Florida and West Virginia. Considering the circumstances, the delay in making the request for an examination is not particularly egregious, or indicative of a pattern of dilatory behavior.

Finally, the docket control order for the Wave 1 and Wave 2 cases is significantly different from a standard scheduling order in that it does not include deadlines for *Daubert* motions, motions *in limine*, deposition designations, and similar pretrial and trial filings. Instead, PTO #100 requires the parties to conduct discovery and then submit dispositive motions no later than January 9, 2015 with all briefing to be completed by January 30, 2015. All cases in Wave 1 and Wave 2 are expected to be ready for trial by the end of January and upon resolution of the dispositive motions, the court shall either try the cases, transfer, or remand them. Consequently, unlike most cases where the scheduling order is arranged in a particular manner, so that tasks build on

7

each other and either resolve the case or narrow the issues and culminate in trial on a specific date, PTO #100 provides only a partial schedule. At this point in the schedule, there is enough flexibility for Defendant to obtain an independent medical examination without affecting the remaining time frames.

Plaintiff's argument that she will be greatly prejudiced if the court allows the examination because it will lead to supplementation by her expert witness and inevitably add to discovery time and costs is not persuasive. The same supplementation may have occurred even if the examination had taken place in time for Dr. Green to have incorporated the results in his Rule 26(a)(2) report. Similarly, Plaintiff's contention that she should not have to submit to an examination by a physician whose opinions are known to be contrary to her interests is unavailing. Litigation is, by its nature, adversarial. Defendant is entitled to have its examination performed by an expert of its choosing as long as the expert is qualified. Plaintiff does not challenge Dr. Green's credentials to perform the examination.

Wherefore, the court finds good cause for granting Defendant's motion to compel an independent medical examination. Defendant shall arrange and pay for the examination and provide Plaintiff with notice of the time and place of the examination.

The Clerk is instructed to provide a copy of this Order to counsel of record.

**ENTERED:**  December 17, 2014

Cheryl A. Eifert
United States Magistrate Judge

8